| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------- X<br>   PRECIOUS C. FLEMING,<br><br>                                    Plaintiff,<br><br>              -against-<br><br>   J. CREW,<br><br>                                    Defendant.<br>------------------------------------------------------------- X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 10/21/2016<br><br><br><br>1:16-cv-2663-GHW<br><br>MEMORANDUM OPINION AND<br>ORDER |

GREGORY H. WOODS, United States District Judge:

**I.   INTRODUCTION**

Plaintiff, Precious Fleming, proceeding *pro se*, brought this action against Defendant, J. Crew, alleging that J. Crew discriminated and retaliated against her based on her race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Defendant moved to compel arbitration of Plaintiff's claim and to stay this action pending the arbitration proceeding. Because the Court finds that Plaintiff entered into an enforceable arbitration agreement that mandates arbitration of her claims, Defendant's motion is GRANTED.

**II.   BACKGROUND**

    **A.  Facts**

In August 2012, Plaintiff began working as a part time merchandizer at the Columbus Circle J. Crew men's store in New York.  Compl., Dkt. No. 2, at 6.  Plaintiff occasionally worked at the women's store located in the same building, and eventually transferred to work at that store.  *Id.* Following her reassignment, Plaintiff inquired about a full-time position at that location; she alleges

that a store director informed her that she "needed to know the higher executives in the company" in order to be considered for the position. *Id.*

In May 2014, Plaintiff received an annual review for her work performance in 2013. *Id.* Plaintiff disagreed with the evaluation contained in the review and requested a meeting with management to discuss her concerns. *Id.* The meeting took place on June 26, 2014, during which Plaintiff alleges that she was first told that her evaluation was based in part on her sales data. *Id.* Plaintiff also alleges that, after the meeting, she was "harassed and put into uncomfortable situations that eventually started to take a toll on [her] attendance" at work. *Id.* In addition, Plaintiff alleges that her hours "were cut drastically," and that the harassment continued for approximately eight months. *Id.* at 3. After management eliminated all of her hours, Plaintiff alleges that she had no choice but to seek employment elsewhere.

As alleged in the complaint, when Plaintiff no "longer felt comfortable talking to [in-store] management" about her grievances, she contacted J. Crew's "Open Talk Hotline," spoke to J. Crew's Regional Human Resource Manager, and, following her termination, wrote a letter to J. Crew's Chief Executive Officer. In addition, Plaintiff alleges that a Caucasian woman was subsequently hired for the full-time position about which Plaintiff had previously inquired, and that, when she confronted management about that hiring decision, J. Crew claimed that Plaintiff lacked the skills necessary for the position. *Id.* at 7.

### B. Agreement to Arbitrate

In September 2013, Defendant rolled out a form arbitration agreement to its employees, including Plaintiff. Decl. of Marni Opatowsky ("Marni Decl."), Dkt. No. 19 ¶ 2. Plaintiff signed one such agreement on April 19, 2014. *Id.* ¶ 6. The agreement expressly states that it "applies to any dispute, past, present or future, arising out of or related to [the employee's] application and

hiring, employment tenure, and/or separation of employment with [J. Crew] . . . ."  Marni Decl., Ex. 1 ¶ 1.  The agreement further states,

> Except as otherwise provided herein, the claims covered by this Agreement include, but are not limited to:  claims for unfair competition and violation of trade secrets; claims related to the employment relationship but arising after that relationship ends . . . . tort or statutory claims for harassment, retaliation and discrimination; and any claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance . . . .

*Id.* ¶ 2.

Signing the agreement was not a condition for continued employment at J. Crew.  As expressly stated in the agreement, "Arbitration is not a mandatory condition of Associate's employment at the Company, and an Associate may opt out and not be subject to this agreement."  *Id.* ¶ 9.  Plaintiff did not opt out from the arbitration agreement.  Marni Decl. ¶ 6.

### C.  Procedural History

Plaintiff commenced this action on April 8, 2016 after receiving a right to sue notice from the U.S. Equal Employment Opportunity Commission.  On August 24, 2016, Defendant filed a motion to compel arbitration and to stay this action.  Dkt. No. 17.  Plaintiff's opposition to that motion was due no later than 30 days following the service of Defendant's motion.  Dkt. No. 15.  By letter dated October 3, 2016—more than a week after the deadline for Plaintiff to file her opposition—Plaintiff requested a 20-day extension of time to file her opposition.  Dkt. No. 22.  The Court granted the request, and extended the deadline for Plaintiff to file her opposition to October 17, 2016.  Plaintiff filed a letter in opposition to Defendant's motion on October 17, 2016.  Dkt. No. 24.

### III.  DISCUSSION

The FAA was enacted to "replace judicial indisposition to arbitration with a national policy favoring [it] . . . ."  *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (internal

quotation marks omitted) (alteration in original).  The FAA is "is an expression of 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (quoting *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).  Under Section 2 of the FAA, as a general matter, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Sections 3 and 4 of the FAA require courts to stay the litigation of claims subject to an arbitration agreement and to compel their arbitration upon application of either party to the agreement.  *See* 9 U.S.C. §§ 3, 4.  "[W]hen all the claims in an action have been referred to arbitration and a stay [is] requested . . . the text, structure, and underlying policy of the FAA mandate a stay of proceedings." *Katz v. Cellco Partnership*, 794 F.3d 341, 343 (2d Cir. 2015).

In deciding a motion to compel arbitration, "the court applies a standard similar to that applicable [to] a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also id.* ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability.").  Thus, "it is proper (and in fact necessary) to consider . . . extrinsic evidence when faced with a motion to compel arbitration," *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 CIV. 839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32 (2d Cir. 2001)), and "[i]f the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried," *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial.").  "[T]he party resisting

arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342-43 (S.D.N.Y. 2014) ("Whether it argues that arbitration is improper because the arbitration agreement is invalid under a defense to contract formation, or asserts that the arbitration contract does not encompass the claims at issue, either way, the resisting party shoulders the burden of proving its defense." (internal quotation marks omitted)).

In determining whether to compel arbitration, the Court must conduct the following inquiries:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (quoting *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).

### A. Whether the Parties Agreed to Arbitrate

"Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). Under New York law, "a party seeking arbitration need only prove the existence of a valid arbitration agreement by a preponderance of the evidence." *Couch v. AT&T Servs., Inc.*, No. 13-cv-2004 (DRH) (GRB), 2014 WL 7424093, at *3 (E.D.N.Y. Dec. 31, 2014). "To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999).

Here, the arbitration agreement included the following statement immediately preceding the signature line:

> BY SIGNING BELOW, ASSOCIATE ACKNOWLEDGES THAT
> HE OR SHE HAS CAREFULLY READ THIS AGREEMENT
> AND AGREES TO ITS TERMS.  ASSOCIATE AGREES THAT
> BY SIGNING THIS AGREEMENT, THE COMPANY AND
> ASSOCIATE ARE WAIVING THEIR RIGHTS TO A JURY
> TRIAL AND THAT PURSUANT TO THE TERMS OF THIS
> AGREEMENT, WE ARE AGREEING TO ARBITRATE
> CLAIMS COVERED BY THIS AGREEMENT.

Marni Decl., Ex. A at 3 (emphasis in original).  By signing the agreement, therefore, Plaintiff agreed to arbitrate the claims that fall within the scope of the agreement.  Indeed, Plaintiff acknowledges in her opposition letter that she "signed t[he] arbitration agreement" and that, "[a]round the time of signing this agreement on April 2014," she did not experience any problems at her place of employment "so there was no reason not to sign it."  Pl.'s Opp'n at 1.

Plaintiff has not identified a valid basis for concluding that her assent to the Agreement's arbitration provision was inadequate or that the agreement is invalid.  Plaintiff maintains that she signed the agreement because "it was made as if it was mandatory" to do so, "was given at a short notice where [employees] had to read it & sign the same day given," and, "[n]ot understanding the law entirely, it was never highlighted that [employees] were able to opt out."  *Id.*  As the Second Circuit has held, however, "in the absence of fraud or other wrongful act on the part of another contracting party, a party '"who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . . ."'  *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (quoting *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 416, 125 N.E. 814 (1920)).  "Thus, even if [Plaintiff] did not understand" whether the agreement was mandatory, whether she could opt out, or the implications of entering into the agreement, "as [s]he alleges, the burden was upon [her] to have h[er] concerns addressed before signing" it.  *Id.*

In addition, while Plaintiff asserts that she was asked to sign the agreement on the day on which it was presented to her, the opt-out provision afforded her with 30-day period during which she could have opted out.  Marni Decl., Ex. 1 ¶ 9.  Plaintiff did not exercise her right to opt out and

is, therefore, required by the terms of her signed and valid to arbitrate claims governed by the agreement. *Rodriguez v. Four Seasons Hotels, Ltd.*, No. 09 CIV. 2864 (DLC), 2009 WL 2001328, at *4 (S.D.N.Y. July 10, 2009) (holding that plaintiff must arbitrate his claims where an employment contract included an arbitration provision and that "plaintiff's claim of unequal bargaining power as a reason to find the arbitration clause unenforceable rings especially hollow given the fact that he was not required to submit to the offending mediation/arbitration provision as a condition of employment, but was provided with the choice of opting-out," which he did not exercise); *see also Teah v. Macy's Inc.*, No. 11-CV-1356 CBA MDG, 2011 WL 6838151, at *5 (E.D.N.Y. Dec. 29, 2011).

### B. Remaining Factors

The remaining three factors—whether the Plaintiff's claims are within the scope of the arbitration agreement, whether Congress intended any federal statutory claims to be arbitrable, and whether to stay the proceedings if some, but not all, of the plaintiff's claims are arbitrable—are undisputed. *See JLM Indus.*, 387 F.3d at 169. Specifically, it is undisputed that Plaintiff's claims in this case are within the scope of the arbitration agreement, which "applies to any dispute, past, present or future, arising out of or related to [the employee's] application and hiring, employment tenure, and/or separation of employment with [J. Crew]" and covers "claims related to the employment relationship but arising after that relationship ends . . . . tort or statutory claims for harassment, retaliation and discrimination; and any claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance . . . ." Marni Decl., Ex. 1 ¶¶ 1-2. "Congress specifically approved arbitration of Title VII claims in the Civil Rights Act of 1991, expressly stating that the 'use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.'" *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 487 (2d Cir. 2013) (quoting Civil Rights Act of 1991, Pub. L. No. 102–166, § 118, 105 Stat. 1071 (1991)). Finally, because Plaintiff's complaint only asserts

7

discriminatory conduct in violation of Title VII, the NYSHRL and the NYCHRL, all of Plaintiff's claims are subject to arbitration. Accordingly, Plaintiff has not met her burden of proving that the arbitration agreement is unenforceable or that her claims are not suitable to arbitration.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to stay this action and compel arbitration of Plaintiff's claims is GRANTED. This action is, therefore, stayed, pending resolution of the arbitration proceeding.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 17.

The Court will mail Plaintiff a copy of this opinion together with copies of the unpublished decisions cited herein.

SO ORDERED.

Dated: October 21, 2016
New York, New York

_____
GREGORY H. WOODS
United States District Judge